[Dkt. Nos. 18, 27]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ERNEST R. SHAW,<br><br>    Plaintiff,<br><br>              v.<br><br>BURLINGTON COUNTY CORRECTIONS<br>A/K/A BURLINGTON COUNTY BOARD OF<br>CHOSEN FREEHOLDERS, WARDEN RONALD<br>COX, LT. CARLOS BARNWELL,<br>SGT. WILLIAM NUNN, OFFICER<br>DAVIS, JORDAN EL, AND DOES 1-10,<br><br>    Defendants. | Civil No. 1:11-CV-07056(RMB/JS)<br><br>**OPINION** |

Appearances:

Olugbenga O. Abiona
1433 South 4th Street
Philadelphia, PA 19147

        Attorney for Plaintiff

Stephen E. Siegrist
O'Connor Kimball LLP
51 Haddonfield Road, Suite 330
Cherry Hill, NJ 08002

        Attorney for Defendant Burlington County Corrections

J. Brooks Didonato
Parker McCay P.A.
9000 Midatlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, NJ 08054

        Attorney for Defendants Burlington County Corrections,
        Warden Ronald Cox, Lt. Carlos Barnwell, Sgt. William Nunn,
        and Officer Davis

**BUMB**, UNITED STATES DISTRICT JUDGE:

Defendants Warden Ronald Cox ("Warden Cox"), Lt. Carlos Barnwell ("Barnwell"), Sgt. William Nunn ("Nunn"), and Officer Davis ("Davis") (collectively, the "Individual Defendants") and Burlington County Corrections ("BCC") (and, collectively, the "Defendants") have moved for summary judgment. [Docket Nos. 18, 27]. For the reasons that follow, their motions are GRANTED, in part, and DENIED, in part.

I.    Background

    A.    Factual

Plaintiff was a prisoner in the minimum security wing at BCC from October of 2009 through January of 2010. The minimum security wing has no cameras, and guards are not always present to watch inmates. [Docket No. 29-2, Exhibit B, Deposition of Dawn Harris ("Harris Dep.") at 11:1-24]. While playing cards on December 9, 2009, Plaintiff was assaulted by Defendant El, a fellow prisoner at BCC's minimum security wing. [Docket No. 21-4, Declaration of Ernest Shaw at ¶¶ 3-4] ("Shaw Dec."). Plaintiff was beaten so badly that his nose and teeth were broken, and because no guards are present at the minimum security facility, no corrections officers were there to stop the assault. (Shaw Dec. ¶¶ 3, 6).

        1.    El's History of Violence at BCC

Plaintiff's assailant, El, was a long-time inmate at BCC with a well-documented history of violence. [Docket No. 29-4, BCC Records ("BCC Records") at 2-56]. His wrap-sheet stretched back to 2002, when he twice assaulted fellow inmates. (BCC Records at 2, 20). In April of 2008, he again assaulted a fellow inmate while the inmate was lying on the top of a bunk bed, dragging the inmate off so that he hit his head on the ground. (BCC Records at 31). El then proceeded to beat his victim about the face. (BCC Records at 31). El's next assault came on August 25, 2008, when he attacked an inmate in the BCC kitchen, striking him in the face and eye. (BCC Records at 26, 36).

In September of 2008, El again attacked a BCC inmate, stabbing the victim in the face with a pen before the evening lockdown of the facility. The victim was not found by BCC staff until the following morning. (BCC Records at 50).

Based on BCC's official policies and procedures, signed by Warden Cox, El should have been housed in a medium or maximum security facility, not the minimum security wing with Plaintiff at BCC. (BCC Records at 68, 70). El was also actually classified as a maximum or medium security inmate by corrections staff, based on his history of violence. (BCC Records at 66, 67). On two occasions, corrections staff predicted that El would attack other inmates in the future. (BCC Records at 37, 56). Moreover, Warden Cox had personal knowledge of, at a minimum, El's

assaults in April and August of 2008. [Docket No. 29-2, Exhibit
H, Deposition of Warden Cox ("Cox Dep.") at 25:15-24, 26:1-26,
and 27:11-14];(BCC Records at 40). Barnwell also had personal
knowledge of El's record. (Docket No. 29-2, Exhibit E,
Deposition of Lt. Carlos Barnwell ("Barnwell Dep.") at 10:6-10].
After the attack occurred, Plaintiff says Barnwell told him that
El was known for violence. (Shaw Dec. ¶ 8). Plaintiff also says
he heard Barnwell make jokes about El's propensity for violence.
[Docket No. 30-3, Exhibit E, Deposition of Ernest Shaw ("Shaw
Dep.") at 25:17-21; Shaw Dec. ¶ 8].

Despite corrections reports classifying El as a maximum
security prisoner, and despite corrections staff predictions
that El would attack other inmates, El was living in the minimum
security wing when he attacked Plaintiff on December 9, 2009.
El's attack was so forceful that his clothes were covered in
blood, and when he was found by BCC staff, he promptly admitted
to assaulting Plaintiff. [Docket No. 29-2, Exhibit A, Deposition
of Officer Davis ("Davis Dep.") at 23:3-11].

2. <u>BCC Staff's Response to Plaintiff's Injuries</u>

Because no guards were present, Plaintiff needed to locate a
guard following the beating. (Shaw Dep. at 37:4-14). BCC staff then
took the badly bleeding Plaintiff to see the facility's nurse, who
cleaned and bandaged his wounds. (Shaw Dep. at 39:13-22). Plaintiff
at this point specifically asked to go to a hospital, and although

the nurse believed his nose was broken, the nurse said it was up to Defendant Barnwell to decide if Plaintiff could be sent to the hospital. (Shaw Dep. at 40:17-20). Ultimately, Plaintiff's request to go to a hospital was denied. (Shaw Dep. at 40:21-22).[1]

Instead, Defendants placed El in administrative segregation. (Shaw Dep. at 39:3-9). Defendants did so based on El's allegation that Plaintiff had also been fighting. (BCC Records at 143). Plaintiff was placed in a cell "hurt and freezing," because the window of the cell was broken, allowing the winter air into the room. (Shaw Dep. at 46:5-10). Badly injured, Plaintiff claims that he asked all of the Individual Defendants to send him to a doctor, but that those requests were denied.[2] (Shaw Dec. ¶ 5 (referring to Davis as "Corrections Officer Davis"); (Shaw Dec. ¶ 17)("On December 29, 2009, I . . . requested that the corrections officer take me to a dentist for evaluation of the broken teeth and for proper pain medication and treatment of this injury, but the Corrections Officers, Lt. Barnwell, and the Warden ignored my request without telling me why I could not

---

[1]     While Defendants tell a different story as to Plaintiff's treatment (DSMF ¶¶ 9, 11- 15-20), this Court must credit Plaintiff's version of events in deciding a summary judgment motion, since Plaintiff is the non-movant here. See Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

[2]     In recounting his requests for treatment, Plaintiff did not specifically identify Officer Davis as one of the individuals from whom he requested medical treatment. He did, however, indicate that he asked all of the correction officers for such treatment. This Court, granting all reasonable influences to Plaintiff as the non-movant, has construed Plaintiff's references to asking all of the "corrections officers" for treatment to include Officer Davis. If this is not correct, Plaintiff shall promptly advise the Court.

be taken to a hospital or dentist to be seen.");(Id. ¶ 19)("I
continuously asked the corrections officers, Lt. Barnwell, and sent
written requests and complaints to Warden Cox about been [sic] in
serious pain and the need to be taken to a hospital emergency room
for proper examination and treatment of these injuries, but
Defendants ignored my requests and complaints."); (Shaw Dep. at 41:8-
17)(Q: Did you ever ask the nurse of any of the officers to go to the
hospital? A: I asked every one of them. As a matter of fact, I was
talking to Sergeant Nunn and he was saying that [Barnwell] wouldn't
allow me to go to the hospital[.]").

According to Nurse Maurice Diogo, prison procedure is that
corrections officers transmit medical requests on behalf of inmates,
and that without the corrections officers passing along medical
requests, the nurses would not know if prisoners need medical
attention. [Docket No. 29-2, Exhibit C, Deposition of Nurse Maurice
Diogo ("Diogo Dep") at 52:1-4]. Plaintiff was released from
administrative segregation on December 13, 2009. (Shaw Dep. at
41:22). Plaintiff saw a nurse again on at least one occasion after
December 9, 2009, but never saw a doctor for his injuries while
incarcerated.

Following Plaintiff's release, in January 2010, Plaintiff
was still in pain and sought treatment at the emergency room at
Saint Joseph's Hospital in Philadelphia. (Shaw Dep. at
62:7);[Docket No. 29-5, Medical Records of Ernest Shaw ("Medical

Records") at 12]. X-rays of Plaintiff's head "revealed fractures

of the nasal bone" and "[d]ental fractures[.]" (Medical Records

at 12). As a result of his injuries, Plaintiff continues to

suffer from headaches, visual disturbances, nasal pain, and

dental pain. (Medical Records at 12). Doctors also concluded

that Plaintiff suffers from post-concussion syndrome. (Medical

Records at 13).

     B.   <u>Procedural</u>

     On December 3, 2011, Plaintiff filed a Complaint in this

Court, asserting three counts. [Docket No. 1, Complaint

("Compl.")]. First, the Complaint asserts constitutional claims

pursuant to 42 U.S.C. § 1983 against the Defendants. (Compl.

¶¶ 27-29). Those claims are based on: (1) Defendants' denial of

proper medical care; (2) Defendants' failure to protect

Plaintiff from El; (3) Defendants subjecting Plaintiff to cruel

and unusual punishment by placing him solitary confinement; and

(4) Defendants' "deliberate indifference to the assault of

Plaintiff . . . in a minimum security prison and failing to take

proper steps to prevent these unlawful inflictions of punishment

on Plaintiff from taking place." [Docket. 29, Plaintiff's

Second Brief at 2].

     Second, the Complaint asserts claims of common law

negligence against the Defendants. (Compl. ¶¶ 30-36). Those

claims are based on: (1) denying Plaintiff's requests for proper

medical care; (2) failure to protect Plaintiff from El; (3) subjecting Plaintiff to disciplinary action – his placement in solitary confinement; and (4) failing to take proper steps to prevent harm to Plaintiff. (Plaintiff's Second Brief at 2-3).

Finally, the Complaint asserts assault and battery against Jordan El, who has not appeared in this case. (Compl. ¶¶ 37-39).

On February 17, 2013, BCC moved for partial summary judgment. (Docket No. 18). On May 1, 2013, BCC and the remaining Defendants, with the exception of El, moved for complete summary judgment with respect to the claims asserted against them. (Docket No. 27).

II. Legal Standard

When deciding a motion for summary judgment, it is inappropriate for a court to resolve factual disputes or make credibility determinations. Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). The court instead must draw all inferences in favor of the non-moving party's evidence, and where the non-moving party's evidence contradicts the movant's, then the court must take the non-movant's evidence as true. Id.

Courts may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under

the governing law[.]" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  <u>Id.</u> at 248.

If the movant has carried its burden of producing evidence, or pointing to a lack of plaintiff's evidence, in support of summary judgment, then the non-movant must come forward with specific facts showing that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)(holding that the non-movant must do more than simply show there is some metaphysical doubt as to the material facts).

III. <u>Analysis</u>

This Court first addresses Plaintiff's constitutional claims.  It then addresses Plaintiff's common law claims.

A.   <u>Constitutional Claims</u>

With respect to Plaintiff's constitutional claims, while Plaintiff articulated those claims as four separate claims, two appear to be based on identical conduct – the alleged failure to protect Plaintiff from El – and the Court addresses them as such.  The Court addresses each of Plaintiff's claims against the Individual Defendants in turn.  It then addresses BCC's liability for the conduct of its employees.

1.    Against the Individual Defendants: Failure to
      Protect Claim

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). "To survive summary judgment" on an Eighth Amendment failure to protect claim, a plaintiff must produce sufficient evidence of: a substantial risk of serious harm from another inmate, the defendants' deliberate indifference to that risk, and causation. Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 2003). "To be deliberately indifferent, a prison official must both know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834. This standard is subjective, not objective, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. See Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001).

Awareness of risk, however, does not require that prison officials have "advance notification of a substantial risk of assault posed by a particular fellow prisoner." Farmer, 511 U.S. at 849 n.10; see also Harper v. Albo, Civil No. 10-755, 2011 U.S. Dist. LEXIS 95651, at *16-17 (E.D.Pa. Aug. 24, 2011)(denying summary judgment as to failure to protect when prison official put a known "snitch" in general prison

population, despite knowing that general prison population would be violent with such a prisoner).

Nor does it require a plaintiff to show that prison officials knew of a particular risk to the plaintiff personally. "[A] plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation." <u>Beers-Capitol</u>, 256 F.3d at 132.[3] Thus, a plaintiff may prevail on a showing "that prison conditions posed a generalized threat to the safety of all inmates." <u>Coronado v. Goord</u>, No. 99 Civ. 1674, 2000 U.S. Dist. LEXIS 13876, at *16 (S.D.N.Y. Sept. 26, 2000); <u>Mayoral v. Sheahan</u>, 245 F.3d 934, 939 (7th Cir. 2001)(holding that under <u>Farmer</u>, "it does not matter whether the prisoner is at risk for reasons personal to him or because all the prisoners face the risk.").

With these principles, the Court now considers Plaintiff's failure to protect claims against the individual officers.

a.    <u>Defendants Nunn and Davis</u>

As to Defendants Nunn and Davis, the Court finds there is no evidence to support the notion that they knew of, and

---

[3]    "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." <u>Farmer</u>, 511 U.S. at 842-43.

disregarded, a substantial risk to Plaintiff. Both of these Defendants say they did not know of El's propensity for violence prior to the December 9, 2009 incident. (Davis Dep. at 7:23-24); [Docket No. 29-2, Exhibit H, Deposition of Sergeant Nunn ("Nunn Dep.") at 23:4-8]. In addition, Plaintiff has pointed to <u>no</u> evidence in the record that either Nunn or Davis knew of any risk posed by El to inmates at BCC. Thus, Defendants' summary judgment motion as to Nunn and Davis will be granted.

b.    <u>Defendants Barnwell and Cox</u>

As to Defendants Barnwell and Cox, the Court finds there is a genuine issue as to whether they demonstrated deliberate indifference to a substantial risk of harm.

Plaintiff has presented sufficient evidence that Warden Cox and Barnwell were both aware of El's dangerous and violent behavior that left all inmates at risk, but took <u>no</u> action at all to protect inmates from harm.  That is sufficient.  <u>Accord</u> <u>Parris v. New York State Dep't Corr. Servs.</u>, No. 12 Civ 1849, 2013 U.S. Dist. LEXIS 73407, at *15 (S.D.N.Y. May 23, 2013)(holding that plaintiff could show deliberate indifference "based on a failure to protect him against a general risk of harm to all inmates at the facility."). Accordingly, the Court will deny the motion for summary judgment as to Defendants Barnwell, Cox, and the Does.

2.  Against the Individual Defendants: Deliberate
Indifference to Serious Medical Needs

Deliberate indifference by corrections officials to a prisoner's serious medical needs is unconstitutional under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Pardini v. Allegheny Cnty., No. 12-1254 2013 U.S. Dist LEXIS 69826, at *9 (W.D.Pa. May 16, 2013). A medical need is serious when the need "is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Under this standard, a prison official's failure to respond to an inmate's request for medical care demonstrates deliberate indifference. See Tormasi v. Hayman, 452 F. App'x 203, 207 (3d Cir. 2011)(finding prison employee's failure to respond to inmate's many requests for eye glasses was deliberate indifference); see also Pardini, 2013 U.S. Dist. LEXIS 69826, at *10 (holding, at motion to dismiss stage, that defendants could show deliberate

indifference by failing to respond to an overnight prisoner's request for medical help for his broken arm, when the arm was visibly swollen).

Here, Plaintiff has presented facts showing that he asked each of the Individual Defendants to go to the hospital, but those requests were ignored. Because Plaintiff has presented evidence that he was visibly wounded, had suffered serious head trauma, and was denied access to a doctor by all of the Individual Defendants, he has sufficiently presented evidence of deliberate indifference to a serious medical need with respect to the Individual Defendants. Therefore, the Court denies Defendants' request for summary judgment on this claim. Accord Tormasi, 452 F. App'x 407 (denying summary judgment as to deliberate indifference to serious medical need, based on plaintiff's evidence that he requested eye glasses but was ignored).

### 3. Against the Individual Defendants: Cruel and Unsusual Punishment

"Administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment[.]" Norris v. Davis, No. 10-1118 2011 U.S. Dist. LEXIS 134761, at *9 (W.D.Pa. Nov. 15, 2011); see also Hutto v. Finney, 437 U.S. 678, 687 (1978)("[P]unitive isolation is not necessarily unconstitutional[.]") Thus, to prevail on a claim of

cruel and unusual punishment based on administrative segregation, "an inmate must show that he has been deprived of the minimal civilized measure of life's necessities," and that "a prison official acted with deliberate indifference in subjecting him to that deprivation." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997)(internal quotation marks and citations omitted). The minimal necessities of life include shelter and medical care. See Thomas v. Rosemeyer, 199 F. App'x 195, 198 (3d. Cir. 2006). "To be deliberately indifferent, a prison official must both know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834.

Here, Plaintiff has not presented evidence that he was deprived of the minimal necessities of life, outside of his denial of medical care claim, which this Court is already permitting to go forward. See Farmer v. Kavanagh, 494 F. Supp. 2d 345, 365 (D.Md. 2007)(treating separately a claim for deliberate indifference to serious medical needs and a claim for deliberate indifference to a deprivation of life's necessities). Plaintiff's placement in administrative segregation is not in and of itself sufficient.  And, while the broken window is regrettable, it does not rise to the level of a deprivation of the minimal civilized measure of life's necessities, as required to make out a claim. See Wilson v. Horn, 971 F. Supp 943, 947 (E.D.Pa. 1997)(holding that, despite evidence that prisoner's

cell window was broken during the winter, prisoner was not subjected to cruel and unusual punishment).[4]  Under these circumstances, Defendants' motion for summary judgment on this claim is GRANTED.

### 4.   BCC's Liability

In order to succeed on a claim under § 1983 against a municipality based on the acts of its individual employees, a plaintiff must establish that the implementation of a municipal policy or practice caused his constitutional injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006). An individual's conduct implements official policy or practice when the individual acted pursuant to a formal policy, when the individual is a policymaker, or when a policymaker ratifies the individual's conduct after it has occurred. Hill, 455 F.3d at 245; see also Pembaur v. City of Cincinnati, 475 U.S. 469, 478-484 (1986). An official with policymaking authority "can create official policy, even by rendering a single decision." McGreevey v. Stroup, 413 F.3d 359, 368 (3d Cir. 2005). It is the

---

[4]      Plaintiff argues that he was wrongly sent to administrative segregation, which suggests that Plaintiff is alleging a due process violation, and Defendants have briefed this argument. Plaintiff, however, has not addressed any due process argument in his briefing, instead expressly relying on the Eighth Amendment. Thus the Court finds that "Plaintiff's failure to respond to the defendant's arguments on summary judgment constitutes an abandonment of" any due process "causes of action and essentially acts as a waiver of these issues." Brenner v. Twp. of Moorestown, No. 09-219, 2011 U.S. Dist. LEXIS 52760, at *34 (D.N.J. May 17, 2011).

plaintiff's burden, in the context of Eighth Amendment claims against a corrections facility, to establish that a particular individual is a policymaker and even a warden is <u>not</u> necessarily a policymaker for the purpose of <u>Monell</u> liability. <u>See</u> <u>Cortlessa v. Cnty of Chester</u>, No. 04-1039, 2006 U.S. Dist. LEXIS 34513, at *22-23 (E.D.Pa. May 26, 2006)(holding warden was not a policymaker under <u>Monell</u>)("The mere fact that [the] Warden . . . as part of his duties, supervised prison officials is, by itself, insufficient to confer "policymaker" status.); <u>see also</u> <u>Mayfield v. Montgomery Cnty. Corr. Facility</u>, No. 03-CV-2234, 2008 U.S. Dist. LEXIS 52012, at *15-16 (E.D.Pa. July 2, 2008)(finding warden is not necessarily a policymaker for purpose of <u>Monell</u> liability); <u>Kis v. Cnty. Of Schuylkill</u>, 866 F. Supp 1462, 1479 (E.D.Pa. 1994)(same); <u>Thornton v. City of Philadelphia</u>, No. 04-2536, 2005 U.S. Dist. LEXIS 24477, at *10 (E.D.Pa. Oct. 21, 2005)(holding at summary judgment that warden of Philadelphia jail was not a policymaker).  A plaintiff must instead affirmatively offer evidence that the warden acts as a policymaker.  <u>Corlessa</u>, 2006 U.S. Dist. LEXIS 34513, at *22-23.

Here, Plaintiff argues that BCC is liable on all counts based on the conduct of Warden Cox and his subordinate, Captain Mildred Scholtz, a prison employee involved in the classification of inmates, [Docket No. 29-2, Exhibit G, Deposition of Mildred Scholtz ("Scholtz Dep.") at 23:7-12],

because they are policymakers. (Plaintiff's Second Brief at 13).
This Court disagrees. Plaintiff has failed to adduce evidence
that demonstrates that either Warden Cox or Captain Scholtz are
policymakers within the ambit of <u>Monell</u>, as required. The Court
therefore grants in full the motion for summary judgment with
respect to Defendant BCC. <u>Accord</u> <u>Jordan v. Cicchi</u>, No. 08-6088,
2009 U.S. Dist. LEXIS 51314, at *11 (D.N.J. June 18,
2009)(holding that without factual allegations demonstrating
otherwise, the warden of Middlesex County Adult Correction
Center did not make policy for the purpose of liability under
<u>Monell</u>).

     B.   <u>Common Law Claims</u>

     Defendants argue that they are immune from Plaintiff's
negligence claims under the New Jersey Tort Claims Act (the
"NJTCA"). [Docket No. 30, Defendants' Fourth Brief at 23].
Negligence actions against public employees, including a failure
to protect a prisoner from another prisoner, are generally
barred under the NJTCA unless there is willful misconduct,
fraud, or actual malice. <u>Tice v. Cramer</u>, 133 N.J. 347, 375 (N.J.
1992)(citing N.J.S.A. ¶ 59:5-2b(2) and N.J.S.A. § 59:3-3);
<u>Crawford v. City of Newark</u>, No. L-9390-03, 2008 WL 1831265, at
*2 (N.J. Super. Ct. Apr. 25, 2008)(holding that plaintiff's
pleading willful misconduct was sufficient to overcome "the
immunity that otherwise shields the simply negligent acts of

public employees acting within the course of their official employment.”); see also Rosario v. City of Union City Police Dep't, 131 F. App'x 785, 790 n.2 (3d Cir. 2005); Antoine v. Rucker, No. 03-3738, 2007 U.S. Dist. LEXIS 35323, at *15 (D.N.J. May 14, 2007).[5] “Prior decisions have suggested that willful misconduct is the equivalent of reckless disregard for safety[.]” Fielder v. Stonack, 141 N.J. 101, 124 (N.J. 1995); Antoine, 2007 U.S. Dist. LEXIS, at *15. With respect to a municipality's liability for the conduct of its employees under the NJTCA, “a public entity is not liable for the acts or omissions of a public employee constituting . . . willful misconduct.” Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 444 (D.N.J. 2011)(quoting N.J.S.A § 59:2-10); McGovern v. City of Jersey City, No. 98-CV-5186, 2005 U.S. Dist. LEXIS 38644, at *50(D.N.J. Jan. 6, 2006)(granting summary judgment to city under NJTCA, because city could not be liable on basis of its employees' willful misconduct, malice, or fraud). Municipalities are also not liable for injuries “resulting from an act or omission of a public employee where the public employee is not liable.” Burke v. Monmouth County Prosecutor's Office, No. 10-

---

[5]    The New Jersey Tort Claims Act provides that “a public employee is not liable for . . . any injury caused by . . . a prisoner to any other prisoner.” N.J.S.A. § 59:5-2b(2). It also provides that a “public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law.” N.J.S.A 59:3-3.

4796, 2011 WL 1485470, at *4 (D.N.J. Apr. 19, 2011)(citing to N.J.S.A. § 59:2-2(b)); Whesper v. Tulli, No. L-619-05, 2008 WL 582800, at *10 (N.J. Super. Ct. Mar. 5, 2008)("[W]hen the public employee is not liable, neither is the [public] entity."); Klein v. Kushins, No. L-867-04, 2007 WL 2188627, at *3 (N.J. Super. Ct. Aug. 1, 2007)(holding that to find a public entity liable in a tort action, the court must first find that one of the public entity's employees is liable.)

Here, Plaintiff has essentially asserted the same three constitutional violations – failure to protect, denial of medical care, and cruel punishment in administrative segregation – as negligence actions. The Court considers each argument with respect to the Individual Defendants and then considers the arguments with respect to BCC.

### 1. Against the Individual Defendants: Failure to Protect

In light of this Court's Eighth Amendment failure to protect analysis, the Court also finds that: (1) the conduct of Defendants Barnwell and Cox constitutes willful misconduct; and (2) there is no evidence of willful misconduct on the part of Defendants Davis and Nunn. See Virgin Islands v. Fahie, 419 F.3d 249, 256 (3d Cir. 2005)("[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk . . . reckless disregard

for a defendant's constitutional rights constitutes willful

misconduct.")(internal citations and quotations omitted).

Accordingly, the motion with respect to this claim is GRANTED

only as to Defendants Davis and Nunn.

### 2. Against the Individual Defendants: Medical Needs

In light of this Court's Eighth Amendment medical needs

analysis, the Court also finds that the conduct of all the

Individual Defendants, with respect to their denial of medical

care for the badly injured Plaintiff, constitutes willful

misconduct. See <u>Fahie</u>, 419 F.3d at 256. Accordingly, the motion

with respect to this claim is DENIED in full.

### 3. Against the Individual Defendants: Plaintiff's Placement in Administrative Segregation

Defendants' placement of Plaintiff in segregation was based

on El's allegation that Plaintiff was also fighting. (BCC

Records at 143). Because the Individual Defendants had a

reasonable basis for segregating Plaintiff, the Defendants did

not act recklessly. Therefore, the Court finds that the

Individual Defendants' placement of Plaintiff in segregation

does not constitute willful misconduct. Accordingly, the motion

with respect to this claim is GRANTED in full.

### 4. BCC's Liability

BCC is not liable because: (1) to the extent this Court has

found the Individual Defendants to be liable, their liability

was based on their willful misconduct, and a public entity cannot be held liable for the willful misconduct of its employees; and (2) to the extent this Court has found the Individual Defendants not liable, BCC cannot be held liable for any of those actions because municipalities cannot be held liable where the public employee is not liable. <u>Trafton</u>, 799 F. Supp. 2d at 444; <u>Burke</u>, 2011 WL 1485470, at *4. Accordingly, the motion with respect to this claim is GRANTED in full.

IV.  <u>Conclusion</u>

For the foregoing reasons, the motions for summary judgment [Docket. Nos. 18, 27] are GRANTED, in part, and DENIED, in part, as set forth in this opinion.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Date: <u>July 31, 2013</u>